UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CHARLES EDWARD PELHAM,            Case No. 6:20-cv-01184-AA

     Petitioner,                              OPINION AND ORDER

    v.

BRANDON KELLY, Superintendent,
Oregon State Penitentiary,

     Respondent.

_____

AIKEN, District Judge.

Petitioner brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and challenges his conviction for Murder. Petitioner claims that his attorney provided ineffective assistance in several respects and that the trial court erred when instructing the jury. The Oregon courts rejected petitioner's claims in decisions that are entitled to deference, and the Petition is denied.

1  - OPINION AND ORDER

BACKGROUND

On October 4, 2010, petitioner was charged by indictment with one count of Murder. Resp't Ex. 102. The charge arose from the stabbing death of Todd Young during an altercation between Young and petitioner.

According to evidence presented at trial, in the early morning hours of September 25, 2010, petitioner was drinking coffee and smoking a cigarette on a sidewalk outside of two establishments, Paddy's Tavern and Dotty's, in Portland, Oregon. Resp't Ex. 105 at 60. Deann Jillette, a Paddy's employee, and Thomas Stone were also standing on the sidewalk. Resp't Ex. 105 at 60. Young and a companion, Troy Kilburn, were inside Dotty's at the time.

Young exited Dotty's to look for an acquaintance and exchanged words with Jillette, ultimately stating something to the effect of, "You can all get fucked." Resp't Ex. 105 at 62-63, 152, 158-61. Petitioner asked Young if he was included in Young's sentiment, and Young quickly strode up to petitioner while loudly asking, "You want a piece of me?" Resp't Ex. 105 at 67-68, 162. After a five- or ten-second "stare down," petitioner threw his coffee at Young and knocked Young to the ground. Resp't Ex. 105 at 71-72, 194. As Young tried to get up, he slipped and fell, hitting his head on the window of a vacant storefront between Paddy's and Dotty's. Resp't Ex. 105 at 72-73, 116, 163, 196. Petitioner then kicked Young twice and took out a knife. Young spread his arms and lunged at petitioner, and petitioner stabbed Young at least three times. Resp't Ex. 105 at 73-75, 163-64. Kilburn, who had rushed outside during the altercation, tried to stand between Young and petitioner as a "peacekeeper" and saw blood streaming down Young's torso. Resp't Ex. 105 at 76-77, 118, 164-65, 197, 216, 218. Petitioner fled the scene and Young died from his injuries shortly afterward. Resp't Ex. 105 at 77, 80.

Petitioner was eventually identified as Young's assailant and charged with Murder. The case proceeded to trial and petitioner argued that he acted self-defense. Petitioner testified that Young and Kilburn exited Dotty's at the same time and were "belligerent" and "obnoxious" before petitioner confronted Young about his comment. Resp't Ex. 107 at 91-92, 108-09. Petitioner further testified that, after he knocked Young to the ground, Kilburn stepped around Young and started "coming" or "charging" at petitioner. Resp't Ex. 107 at 95-98. Petitioner stated that he stabbed Young to defend himself, because he "wasn't going to take a chance" on a "two on one" encounter. Resp't Ex. 107 at 97. On cross-examination, petitioner conceded that he was not sure whether Kilburn's movements were "aggressive" but he did not "want to take a chance." Resp't Ex. 107 at 112-13. The jury rejected petitioner's assertion of self-defense and convicted him of Murder. Resp't Ex. 101.

Petitioner directly appealed his conviction and challenged the trial court's failure to give an instruction regarding self-defense. Resp't Ex. 111. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Resp't Exs. 113-15. Petitioner then sought post-conviction relief (PCR) and alleged that trial counsel provided ineffective assistance. Resp't Exs. 117. The PCR court denied relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 140, 143-45.

Petitioner now seeks federal habeas relief pursuant to 28 U.S.C. § 2254.

## DISCUSSION

Petitioner raises nine Grounds for Relief in his federal Petition. Pet. at 6-8 (ECF No. 2 at 5-7). However, petitioner presents argument in support of only Grounds Two, Four, and Nine, and he does not dispute respondent's argument that Grounds One, Three, and Five through Eight are either not cognizable or procedurally defaulted. *See* Resp. at 4-6 (ECF No. 12); Pet'r Brief at

1 (ECF No. 30). Accordingly, I find that petitioner fails to establish entitlement to habeas relief on Grounds One, Three, and Five through Eight. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (a habeas petitioner bears the burden of proving the asserted claims); *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (accord).

In Grounds Two, Four, and Nine, petitioner asserts the ineffective assistance of trial counsel and a due process violation arising from the trial court's jury instructions. Respondent maintains that the Oregon courts rejected Grounds Two, Four, and Nine in decisions that are entitled to deference and petitioner is not entitled to federal habeas relief.

A federal court may not grant habeas relief regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams,* 529 U.S. at 407-08, 413; *see Penry v. Johnson*, 532 U.S. 782, 793 (2001) ("even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable"). To meet this highly deferential standard, a petitioner must demonstrate that "the state court's ruling on the claim was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

    A.  <u>Ineffective Assistance of Counsel</u>

In Grounds Two and Nine, petitioner claims that his trial counsel rendered ineffective assistance by: 1) failing to seek dismissal of the indictment based on the State's suppression of potentially exculpatory evidence; and 2) failing to object to a police detective's prejudicial testimony.

Under the well-established precedent of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging the ineffective assistance of counsel must show that 1) "counsel's performance was deficient" and 2) counsel's "deficient performance prejudiced the defense." *Id.* at 687. To establish deficient performance, the petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless the petitioner "makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

    1.  <u>Failure to Seek Dismissal</u>

Petitioner argues that counsel should have moved for dismissal of the indictment on grounds that the State suppressed evidence that was material to his theory of self-defense. Petitioner alleges that, shortly after Young's death, a police detective learned of video evidence showing that Kilburn exited Dotty's approximately one minute after Young. *See* Resp't Ex. 150.[1]

---

[1] An investigative report containing details of the video is subject to a protective order issued by the state court, although the general nature of the video is described in unredacted portions of the record. Resp't Ex. 125 at 12-13, 15, 17; Resp't Ex. 138 at 45; *see also* Resp't Exs.

5   -  OPINION AND ORDER

The detective did not take possession of the video or attempt to preserve it, and it was recorded over approximately ten days later. Petitioner maintains that evidence showing Kilburn's exit from Dotty's would have supported his assertion that Kilburn was present and a potential threat to him, and trial counsel should have moved for dismissal on grounds of a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment").

The PCR court rejected this claim, finding that the video evidence from Dotty's was not material: "[T]here is no evidence that the video was exculpatory… [Petitioner] is not on the video and [it allegedly showed] that someone leaves a minute or so after the deceased. The altercation is not on the video, nor is the Petitioner….Nothing there really helps petitioner." Resp't Ex. 140 at 2. The PCR court also found that the detective did not act in bad faith, because at the time he allegedly learned of the video, the detective was unsure of exactly who had killed Young or what type of defense would be asserted. Resp't Ex. 140 at 2. In so finding, the PCR court did not unreasonably apply clearly established federal law.

Under *Brady*, a prosecutor must disclose evidence to the defense that "is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. To establish a *Brady* violation: 1) "the evidence at issue must be favorable to the accused, either because it is exculpatory" or "impeaching"; 2) the "evidence must have been suppressed by the State, either willfully or inadvertently"; and 3) the accused must have been prejudiced. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the

---

119, 150. During petitioner's PCR proceeding, the State disputed that the detective learned of this video evidence. Resp't Ex. 125 at 13-14.

6   -   OPINION AND ORDER

constitutional sense." *United States v. Agurs*, 477 U.S. 97, 109-10 (1976). Rather, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985).

Here, the PCR court reasonably found that the video evidence was not material. At most, the video would have showed Kilburn exiting Dotty's approximately one minute after Young; it would have shed no light on the altercation between petitioner and Young or petitioner's assertion of self-defense. Further, Kilburn's eventual presence at the scene was not contested, as Stone and Gillette both testified that Kilburn ran outside from Dotty's and attempted to intervene after petitioner stabbed Young. Resp't Ex. 105 at 61, 76-77, 118-19, 121, 159, 164-65, 197, 216-18. Moreover, evidence showing that Kilburn left Dotty's shortly after Young would have contradicted petitioner's testimony that Young and Kilburn exited Dotty's at the same time and instead would have bolstered Jillette's and Stone's testimony that Kilburn did not appear or attempt to intervene until petitioner had stabbed Young. Thus, the alleged video evidence was not favorable to petitioner and it is not reasonably likely that its disclosure would have altered the outcome of trial.

Because the alleged video evidence was not material to petitioner's defense, counsel had no basis to seek dismissal on grounds of a *Brady* violation, and it is unlikely that a motion to dismiss would have been granted. Accordingly, the PCR court reasonably found no deficiency by counsel or resulting prejudice, and petitioner is not entitled to habeas relief on Ground Two.

    2.   <u>Failure to Object to Testimony of Police Detective</u>

Next, petitioner argues that counsel was deficient by failing to object to a detective's testimony that allegedly commented on petitioner's credibility. The PCR court rejected this

7   -   OPINION AND ORDER

claim, finding that petitioner's counsel "opened the door" to the detective's testimony. Resp't Ex. 140 at 2. The PCR court's decision was reasonable.

Detective Beniga interviewed petitioner after he was identified as Young's assailant, and a video recording of that interview was played at trial. Resp't Ex. 106 at 56, 59-87. On cross-examination, petitioner's counsel asked Detective Beniga the following questions:

> Q: …During the interview, it appeared Mr. Pelham was shocked to hear that Mr. Young had died…. Do you agree with that?
>
> A: That he expressed surprise? I don't know if I would say shock.
>
> Q: Would you – did you get the impression he didn't know that… Mr. Young had died from that particular incident at Paddy's?
>
> A: My impression was that he didn't know? He stated – reacted as if he didn't know.

Resp't Ex. 106 at 88-89. On redirect examination, the prosecutor asked Detective Beniga to clarify his comment:

> Q: …Defense asked you when you watched the interview of Mr. Pelham whether or not you got the impression that Mr. Pelham was aware that Mr. Young had died before you said that to him in the interview. And I think your answer was you had the impression he did know, but that he reacted like he didn't know. Why do you say that?
>
> A: His reaction seemed, at least to me, based on my experience contrived or feigned I guess would be the right way to say it.

Resp't Ex. 106 at 110. Petitioner argues that the detective's testimony was a direct comment on his credibility and counsel was deficient in failing to object to it.

However, as the PCR court reasonably found, counsel opened the door to Detective Beniga's comment by asking the detective whether he believed petitioner knew Young had died. As a result, counsel had no basis to object to Detective Beniga's comment and any objection would have been overruled. Habeas relief is therefore denied on Ground Nine.

8   -   OPINION AND ORDER

B. <u>Failure to Give Jury Instruction</u>

In Ground Four, petitioner claims that the trial court should have instructed the jury that the use of deadly physical force is justified if a person reasonably believes another person is committing or attempting to commit Assault in the Second Degree, i.e., intentionally or knowingly causing "serious physical injury" to another. Or. Rev. Stat. § 163.175(1)(a). Petitioner did not request this instruction or take exception to its omission. Nonetheless, petitioner argues that the court's failure to give such an instruction sua sponte violated his rights to due process.

To establish a federal due process violation arising from erroneous jury instructions, a petitioner must demonstrate that the trial court's error "so infected the entire trial that the resulting conviction violates due process," when considered in the "context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks and citation omitted). Where the failure to give an instruction is alleged, the burden on the petitioner is "especially heavy" because an "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

As explained above, petitioner claimed that he used deadly force against Young because he feared assault from both Young and Kilburn. Resp't Ex. 105 at 43-44, 48; Resp't Ex. 107 at 95-98; Resp't Ex. 108 at 148, 154. In accordance with petitioner's self-defense theory, the trial court gave the following instructions:

> The defense of self-defense has been raised…. A person is justified in using physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force. In defending, a person may only use that degree of force which he reasonably believes to be necessary….
>
> There are certain limitations on the use of deadly physical force. The defendant is not justified in using deadly physical force on another person unless he reasonably believed that the other person was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person.

9   -   OPINION AND ORDER

> For purposes of this defense, you should consider that Oregon law provides that [] a person commits a crime of Assault in the Third Degree, a felony if the person, while being aided by another person actually present, intentionally causes physical injury to a person. In this case, you should consider whether Todd Young was intentionally causing or attempting to cause physical injury to the defendant, Charles Pelham, and whether Mr. Young was being aided by another person, actually present.

Resp't Ex. 108 at 86-87; *see also* Or. Rev. Stat. § 163.165(1)(e).

Petitioner contends that the evidence also supported an instruction on Assault in the Second Degree as justification for the use of deadly physical force. A person commits Assault in the Second Degree by "intentionally or knowingly" causing "serious physical injury to another." Or. Rev. Stat. § 163.175(1)(a). "Serious physical injury" is defined as "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." *Id.* § 161.015(8). Petitioner contends that the evidence at trial could have supported a reasonable belief that Young was attempting to cause petitioner serious physical injury by lunging at him, and the trial court should have instructed the jury accordingly.

However, petitioner did not testify or argue that he feared serious physical injury from only Young; rather, petitioner testified that he stabbed Young because both Young and Kilburn were "charging" at him and he did not want to "chance" a two-on-one altercation. Resp't Ex. 107 at 95-98. Moreover, petitioner knocked Young to the ground without using deadly force, and Young was unarmed and had not landed a blow before petitioner stabbed him. Resp't Ex. 105 at 58, 71-73, 115-16, 162-64; Resp't Ex. 107 at 95-97. Given this record, it is not reasonably likely that the jury would have found petitioner at risk of "serious physical injury" from Young.

In sum, the evidence did not reasonably support a theory of self-defense based on Assault in the Second Degree, and the trial court's failure to give such an instruction did not "infect" the

10   -   OPINION AND ORDER

entire trial so as to render petitioner's conviction unconstitutional. Accordingly, habeas relief is denied on Ground Four.

## CONCLUSION

The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 2) is DENIED. A Certificate of Appealability is DENIED on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this  9th  day of August, 2022.

                                             /s/Ann Aiken
                                                 Ann Aiken
                                        United States District Judge